First case on our call this morning is agenda number one, case number 107-309, People of the State of Illinois v. Rodney Adkins. Counsel for the appellant may proceed. May it please the court and counsel, I'm Alan Andrews from the Office of the State Appellate Defender, and I represent Mr. Adkins, who was convicted of murder, home invasion and residential burglary by a jury. He waived his right to have his sentence determined by a jury and was sentenced to death by a trial judge who found as the aggravating factors that the murder was committed in the course of a home invasion and was committed in the course of a residential burglary. Both of the aggravating factors in this case are bad, and that is what I'm going to explain in this argument. First issue I'm going to discuss is issue number three, dealing with the felony murder in the course of a home invasion. That aggravating factor was improper because it was not proved without relying on the acts that caused death, the acts that created the murder. And because of that, the aggravating factor did not perform its Eighth Amendment task of narrowing death eligibility. Now, whether a conviction can stand when it shares elements with another offense is a completely different issue from what I'm going to discuss here, whether or not the aggravating factor that relies upon the same acts violates the Eighth Amendment. Now, the State has addressed whether the conviction is improper, but their arguments don't address whether or not this aggravating factor narrowed eligibility, whether or not it complied with the Eighth Amendment. The home invasion conviction in this case is proper, but the felony murder aggravating factor based on that conviction did not perform its narrowing function. The function that it needed to do was remove Mr. Adkins from the class of all murderers and place him in the smaller class of murderers who are eligible for a death sentence. And the reason it didn't do that was because of the way that State charged the offenses in this case. The pertinent part of the murder charge in this case alleged that the death was caused when Mr. Adkins beat and stabbed the decedent. So both the murder and the home invasion rely upon the fact that Mr. Adkins beat and stabbed the decedent. Now, many years ago when people ---- Mr. Andrews? Yes. There was a general verdict, right? That's true. And so it's presumed that the jury found the defendant guilty of intentional murder. That's true. It would go along with that, right? And the home invasion charge has the additional element of entering the dwelling of the victim. That's true. Right. So how do you explain, you know, in People v. McLaurin, this Court held that the home invasion and intentional murder are not based on the same physical act. No, I've already conceded that the home invasion conviction is proper. What I'm discussing is the fact that the home invasion conviction is proper. The home invasion aggravating factor does not narrow the class of a ---- does not narrow Mr. Adkins' eligibility. The home invasion conviction is proper. The State won that argument and I'll concede that under McLaurin the conviction can stand. But the problem here is that the home invasion aggravating factor, because it relies on the act of murder, does not narrow the class of murder. In Johnson, and unlike here, Lenard Johnson, the Court did vacate the home invasion conviction, but as you pointed out, that's not going to happen here. The home invasion conviction is fine. However, in Johnson, this Court recognized that there could be an Eighth Amendment problem when the home invasion conviction cannot be supported without relying on the acts which caused the victim's death. Okay. The issue was not resolved in Lenard Johnson's case because this Court determined that at the bench sentencing, the trial judge did not, in fact, rely upon the home invasion as a statutory aggravating factor in finding Mr. Johnson eligible for the death penalty. So is it your argument that it's not permissible for the home invasion to be predicated on the beating and the murder to be predicated on the stabbing? The murder, if the state had charged the home invasion based on the beating and had charged the murder based on the stabbing, then I wouldn't be here. As I mentioned, it's because of the peculiar way the state charged the offenses in this case that the two offenses rely on the identical acts. And that's the only reason I cited People v. Crespo in my brief. And the state has never contested that the murder and the home invasion rely upon these same physical acts that caused death. They never contested that the injury element and home invasion was based on the same physical act. They've never claimed that they tried to apportion the beating to the home invasion, for example, and the stabbing to the murder. And they did not. Can residential burglary be the triggering offense for the conviction? Well, there is a problem with the residential burglary aggravating factor, and I was going to discuss that as soon as I was finished with this. I don't believe that both aggravating factors are valid, and it would be my position that the court could not simply ignore this issue because the other aggravating factor is also bad, and therefore there are no valid aggravating factors. And you'll get to that? I would prefer to get to that later. I could address that issue right now if you would like. That's okay. I'm not going to force you out of your order. Okay. Well, then I'll finish this. Mr. Andrews, the additional element of entering the dwelling of the victim, that has no import in saying that it isn't the same physical act? No, because it doesn't do anything to narrow the, it doesn't narrow it when the same physical act causes death. It is the murder, it is the act of murder that creates the home invasion in this case. When he entered the home, there was no home invasion. When he remained in the home, there was no home invasion. There was no home invasion until he murdered the decedent. So it is in fact the murder that creates the home invasion in this case. And it is the act of the murder that the state is trying to rely upon to narrow, to take Mr. Adkins out of the class of all murderers and into the class of the death eligible murderers. And that simply doesn't work. There just isn't any narrowing. Another way to look at it, and I'm about to get to the residential burglar issue, but another way to look at it is that you look at the felony murder aggravating statute and it says that the murdered individual was killed in the course of another felony. Well, he wasn't, Ms. McEvin, she was not killed in the course of a home invasion because it didn't exist until she was murdered. If you look at, say, an armed robbery, the guy goes into the store with a gun to rob the place and he shoots somebody, the armed robbery is going on when the murder happens. You look at the residential burglary in this case or in any other case, Mr. Adkins committed residential burglary as soon as he entered with the intent to commit a theft. So that when he killed Ms. McEvin, that was definitely in the course of a residential burglary. But the contrast is there was no home invasion here until he actually murdered the decedent. And therefore, it is the murder that the state is using to create the home invasion. And you're saying that because of the way the case, the matter was charged? It's exactly because of the way the matter was charged in this case. Because they relied on the same physical acts for the injury element in the home invasion and as the cause of death in the murder. Had it been charged differently, there would be no issue. So in any event, I guess the shortest summary is, if you look at the statute, the murder creates the home invasion, the murder creates the aggravating factor. The murder itself, therefore, is trying to be used as the narrowing factor. But all that means is that because Mr. Adkins committed murder, he's eligible for a death penalty. And we know that an automatic death penalty is improper. We know that the Eighth Amendment requires, prohibits all murderers from being sentenced to death. We know that you have to narrow the people who are eligible for a death sentence from all murderers. And we know that the aggravating factors in Illinois serve that function. And in this case, because of the way the case was charged, it did not. Now, moving to Chief Justice Fitzgerald's question about the residential burglary, my point is that that aggravating factor is improper because trial counsel conceded Mr. Adkins' guilt of residential burglary at trial, and that served as a concession that he was eligible for a death sentence, which constituted the ineffective assistance of counsel because it deprived Mr. Adkins of his right to have his death eligibility determined by a trier of fact. In people behattered a long time ago again, this Court announced a rule that counsel cannot concede a client's guilt to a trier of fact unless the record shows that the client has consented to that strategy. This Court stated that such a strategy is totally at odds with defendants' earlier plea of not guilty. Even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond a reasonable doubt. Now, as both I and the State have pointed out in our briefs, the hattery rule has been cut back quite a bit. This Court, for example, has allowed counsel to concede at trial guilt of some offenses, for example, if doing so enhances his credibility with the trier of fact. And I recognize that this was a valid trial strategy. But what I'm asking this Court to do is hold that counsel cannot concede guilt of a charge at trial if that operates as a concession that the defendant is eligible for a death sentence, if it operates as a guilty plea to death eligibility, which is what happened here. Now, counsel in his opening statement said on July 31, 2003, Rodney Adkins committed a burglary at the home of Catherine McAvinchie. This is a concession of guilt to residential burglary, and the State has never argued otherwise. And again, this was a valid trial strategy. But I'm asking this Court to limit such a strategy where it amounts to a plea of guilty to death eligibility. I'm sorry that you recognize there's a possibility that your argument using hattery could be rejected. So my question is, why did you not rely upon Strickland? Well, in the past... I didn't cite these cases because the reason I didn't rely on Strickland is the State never argued that this was not a concession under hattery. What it argued was that it was a permissible concession. Had the State argued that he didn't concede eligibility, I would have argued under Strickland. But it's never been necessary to cite Strickland in the past to this Court when making a hattery argument. I didn't cite these cases. I could submit them as supplemental authority, but both in People v. Chandler and People v. Shatner, when this Court rejected a hattery argument, it went on and considered the issue under Strickland without either defendant ever actually having argued. At least it seems from the opinions that neither defendant in those cases argued that Strickland made the Strickland argument. They relied on hattery. It was rejected, and this Court decided it under Strickland. Well, wouldn't, Mr. Andrews, wouldn't defense counsel in a very difficult case, I think you would admit, multiple confessions, physical evidence, be left with no strategy at all? It would appear that the defense theory at trial was that the defendant burglarized the victim's apartment, but left before she returned home and was murdered by someone else. He never did concede to the intentional murder. No, he did not concede the murder. I agree. So what is he left with, if not with a trial strategy that puts him in the home based on all the evidence that he knew was coming in? Well, he always has a strategy, as this Court pointed out in hattery, of holding the State to its burden of proof, and that would not have required him to concede that Mr. Adkins was eligible for a death sentence. I mean, there were alternatives in this case, and what he did, again, had his concession on residential burglary not operated as a guilty plea to eligibility, I would have no argument that he was ineffective at trial. He was not ineffective at trial, per se. He was ineffective at sentencing because of what he said at trial. But what you're asking this Court to do, and I can tell by your mannerisms that you didn't think that was a particularly great defense in this case either, that he left before the murders were committed. Well, not in the face of all the confessions you mentioned. Right. But if we would take the position, it would go further than this case. If we were going to say that any concession to an aggravating factor that would subject the defendant to the death penalty is per se error, basically, in that particular case, it would limit in all cases the defense attorney from putting on any type of theory of the case, if that theory, good or bad, if it was a better case for the theory that was presented here, because that would be an aggravating factor. So we'd be with this Hobson's choice of do I go with my trial strategy, or is it ineffective assistance to counsel to go with that trial strategy because of the aggravating factor? There is no doubt that this doing what I'm asking would limit trial counsel's options. But I think that given the fact that where the options are pleading a client guilty to the death penalty, when that client did not want to plead guilty to the death penalty, when that client in this case, for example, specifically asked to have the trial judge determine whether he was eligible for the death penalty, I think it's proper to limit the trial attorney's strategies in that fashion. And I can't possibly speculate how much. Doesn't that make it a strategic choice, though, that very argument? I am arguing that it's an impermissible strategic choice to plead your client guilty to eligibility when he has asked to have his eligibility determined. Pleading guilty is a term that you phrase, that you use here. There was no formal plea of guilty. There was no standing before the court and being admonished and pleading guilty. And that's the biggest part of the problem here. Mr. Adkins was never told, as far as we know, as far as the record shows, what the effect of this strategy would be, that he would have no defense to eligibility, that he, in effect, would be pleading guilty. Had he at least pled guilty, the trial judge would have said, Mr. Adkins, if you admit this residential burglary, you're going to be eligible for the death penalty. That is a big part of the problem in this case. There were no protections, as this court has repeatedly afforded defendants. None of those protections were afforded Mr. Adkins in this case. And it was purely trial counsel's decision. And as I said, the record does not show that Mr. Adkins consented to this in any way. And, in fact, it shows that he did not because he asked to have the trial judge determine whether or not he was eligible for a death sentence. We're looking at a possible ineffective assistance of counsel claim in connection with your argument here. Is that correct? That's what this issue is, ineffective assistance. So in that connection, then, when this attorney was faced with the choice of conceding the residential burglary to try and get his client exonerated on the charge of murder and home invasion, if we put ourselves in his position, if he's convicted of murder and home invasion, except for your argument on narrowing the circumstances in which the death penalty can be imposed, would counsel not have to assume at that time that if he was convicted, he was going to be eligible for the death penalty because of the home invasion? Well, whether or not counsel thought he would be eligible for the home invasion, I don't, the point of the, what it is, again, the point of this is that this is a guilty plea, an unsanctioned guilty plea, and counsel can't do that under Hattery. He has to defend his client's case. Now, maybe it's a lost cause. I mean, certainly it seemed like a lost cause.  And that's independent of whether or not counsel thinks there's another home invasion issue. This still amounts to an unsanctioned, impermissible guilty plea to eligibility. I mean, if you were asking me whether or not counsel would have prevailed at the eligibility phase, it seems very unlikely, but that's no excuse. I mean, in Hattery, the case was open and shut. That's not the issue. The issue is whether or not counsel can defy, in essence, his client's wishes and plead him guilty to eligibility when he does not wish to. But he's only eligible if he's found guilty of murder and home invasion, and if his tactic is successful and he's convicted of residential burglary, he doesn't even face the eligibility phase. So we're looking at ineffective assistance of counsel again. Right. It's definitely an ineffective assistance of counsel claim, and it was a valid strategy at trial, had it not conceded his death eligibility. I think I'm not understanding. I just think I'm not getting your question. I apologize. So there's one other point I'd like to make concerning this issue. In my original brief, I said that because this error occurred at trial, Mr. Adkins should be granted a new trial. That, to put it politely to myself, was not well thought out. The error occurred at trial, but the effect of the error was at sentencing. Therefore, the only relief that Mr. Adkins should be granted from this issue would be a new sentencing hearing, not a new trial, and I apologize for that poorly considered request. If there are no other questions, that would conclude my argument. Thank you very much. May it please the Court. My name is John Nowak. I'm an Assistant State Superior from Cook County, and I represent the people of the State of Illinois in this case. Defendant Roddy Adkins was properly convicted of both first-degree murder and home invasion, and his counsel was effective when, faced with overwhelming and an airtight case, conceded his guilt as to the residential burglary. In this case, the victim had left her home, went out for a jog after taking the day off. Defendant entered her home, was in the middle of ransacking her bedroom, burglarizing the place. He was in the living room when she returned. He was admiring her laptop that he was going to steal. She came in. He attacked. He jumped on her. He smashed her back. He broke her back. He paralyzed her from the lower chest down. He fractured 13 ribs. He beat her mercilessly across the face. He bruised her brain, and that was not enough for him. He went to the kitchen and grabbed a knife and came back, stabbed her in the throat so viciously that he cut her carotid artery in half. Again, this wasn't enough. When he first returned with that knife, even though she was paralyzed from the chest down, from the waist down, she still was conscious enough to get her left hand up, and there's a defensive wound on that hand. She was aware of what was happening at this point. But even after he sliced her carotid artery in half, he then viciously got on her back and sawed so viciously and so deep into her neck. There was a gaping wound, and he cut into her spine, nearly decapitating her, and there's spinal fluid along with blood at the seam. He's unfazed by this. He wipes the blood off on her back, goes into the kitchen and rinses it off, and then doesn't leave but continues to burglarize her place and then goes across the hall and burglarizes the neighbor's place or even has time to take a smoke or he leaves a cigarette with his DNA. Here, Your Honors, there was absolutely no question that this defendant was properly convicted of both first-degree murder and home invasion, and there was no defense to his residential burglary case. As for the first issue the defense raises here before this court, there were separate acts here that both supported the conviction and the narrowing of this murder and make it qualified for the death penalty. Did the state charge in the indictment that it was home invasion and murder based upon the beating and the stabbing? That's how the indictment read. It was based on beating and stabbing the victim. But that alone, Your Honor, that does not mean that this was based on a single act if we don't have a separate act because in McLaurin it was the same thing. He was charged with both. The defendant in McLaurin was charged with both first-degree murder and home invasion, and the indictments and the charges for both said it was based on a single setting of a fire. So even here we have multiple beatings and multiple stabbings, but there there was a single act of setting the fire. And this court held that it was properly convicted of both first-degree murder and home invasion  and several appellate court cases have held the same. In particular in Johnson, there was a single shot fired. This is Johnson in the appellate court. There was a single shot fired, and the appellate court following this court's lead held that that single shot supported both the home invasion and the first-degree murder because the home invasion required the additional act of entering the dwelling. Here, because he entered the dwelling, he didn't just murder this woman on the street. He first did that additional act of entering and then murdered her once she returned. Defendant relies on this court's decision in Johnson. But Johnson, as we note in our brief, and it's quite significant, was based on felony murder, not intentional murder. And as the U.S. Supreme Court has held in Edmond, in order for a capital punishment to be the proper sentence, it has to be based on a deliberate murder. That wasn't the case in Johnson. In Johnson, it was based on felony murder. So both the felony murder charge and the home invasion charge all said that he entered the dwelling, committed the acts that committed the murder, and killed her. Here, the home invasion charge includes that entering the dwelling, but the first-degree murder charge does not. So in Johnson, the first-degree murder charge says that he entered the home, but that's not here. That's not true here. That entering the home was a separate act, which supports both the conviction and the narrowing in this case. Again, it was narrowed because the murder occurred inside the home and occurred after he'd entered the dwelling, and that was a separate act. As for the effectiveness of counsel, Your Honors, this defense counsel did not plead guilty to his death eligibility. He fought vigorously as to whether this defendant committed the murder or committed the home invasion. He did not concede every single point towards death eligibility, as defense counsel did in Hattery. In Hattery, the trial counsel in that case stood up, told the jury, my client committed this murder. You are going to find him guilty. I'm not asking you not to find him guilty of the murder. You are going to find him guilty, and then proceeded to follow that so-called strategy throughout the trial. This court held that when you don't challenge any of the charges, not a single charge against the defendant, that that is presumed ineffectiveness. But that's not what happened here, Your Honors. Here, defense counsel conceded as to residential burglary, but fought vigorously as to the first-degree murder charge and the home invasion. In this court's case in Johnson, this court expressly held that Hattery had to be narrowly construed. And this court explained why, because there's a great danger out there to presume ineffectiveness just by conceding one of many charges. Here, the lesser of the charges that he was charged with. This court held that if it were to accept an automatic ineffectiveness rule, there would be a danger that an unscrupulous defense attorney, especially in a death penalty case like here, would deliberately concede guilt as to one charge in order to lay the groundwork for a later reversal. And that's precisely the danger of allowing just one concession to one charge to result in an automatic ineffectiveness. Here, defense counsel had no choice but to concede as to that residential burglary. Otherwise, he would have no credibility whatsoever with the jury. It was an airtight case. We have multiple confessions by the defendant, including one that's videotaped. He talked about how he kicked the door down with his heel at the top and toe at the bottom. And sure enough, that matched up right with the evidence for how he broke in the door. He talked about how he went in the bedroom first and ransacked it. The evidence at the scene showed that he did just that. He talked about how he went in the living room and found the great laptop that he wanted to steal. And the evidence showed that, yes, indeed, he did steal that. The evidence showed that he had, in fact, he had the proceeds from the victim's apartment. He talked about how he also went to the neighbor's apartment and burglarized that. We've got his DNA on a cigarette butt of a cigarette that he smoked in the victim's apartment and in the victim's apartment, we've got his fingerprint on the water bottle that had been filled with coins from the neighbor's apartment that he brought into the victim's apartment. So we've got his fingerprint inside the victim's apartment. And then after the crime, we've got his girlfriend. We recover the Gucci watch that he stole from the victim's apartment. She has that. She has a pair of the victim's prescription sunglasses. We have the pawn slips from him pawning the items, some of the items he stole from the victim's apartment. We've got the testimony and the laptop computer from the person to whom he sold the victim's laptop computer. There is absolutely no question, Your Honors, that this defendant committed not only just the first degree murder in the home invasion, but certainly that residential burglary. Now, defense counsel's theory was everything shows that he was in there, that he had burglarized the place. His fingerprints are there. The DNA is there. The proceeds are there. Everything. His only option for defense counsel, he thought his only chance, was to claim that despite these statements that he murdered the victim, he actually had left the apartment at that time. Not a strong defense, but a defense that he pursued vigorously. But in light of those statements, there was absolutely nothing defense counsel could have done as to that residential burglary. Again, he did not plead guilty to death eligibility. In order for that to happen, he would have had to concede both to the qualifying crime of both residential burglary and home invasion and plead guilty to that, admit guilt to the first degree murder, which is exactly what happened in Hattery. That's not what happened here, Your Honors. In this court, defense counsel now asked this court for a fallback position that he did not argue in his brief, and that is to fall back to Strickland. But as we explained in our brief, even under Strickland, he fails. As to prejudice, there's absolutely no prejudice, Your Honor. In light of all the facts that we discussed, the multiple statements, the physical evidence, the proceeds, everything shows that this defendant committed the residential burglary. He committed the home invasion. He committed the first degree murder. And as far as defense counsel, it was an appropriate strategy by counsel in order to maintain some type of credibility with the jury while vigorously contesting those charges of first degree murder and home invasion that qualified him for the death penalty. For these reasons, Your Honors, and for those in our brief, we ask that this court affirm defendant's death sentence. This was a brutal and heinous crime, and we ask that this court set a date certain for his execution. Thank you. Thank you. I'm going to call a brief recess now. I need to talk to the court. The court will stand briefly recessed. Thank you. Thank you. Thank you. Thank you. Counsel may proceed with rebuttal. I would like to address the state's contention concerning the residential burglary issue. Counsel, before you do, when you were up here on your initial argument, at the end you made it clear that you were not asking for a new trial but a new sentencing hearing. You raised a number of issues in this case, some of which would garner a new trial. So I want to make clear what exactly you're asking for. I'm sorry. I meant concerning the concession aggravating factor, the issue number four, that the proper relief is not a new trial but a new sentencing hearing. I apologize for my overly broad statement. As far as conceding, the state posits that because counsel did not concede that Mr. Adkins was guilty of murder, he did not concede eligibility. But we know that murder is, in fact, not an element of the eligibility. It is not an issue at the eligibility hearing. It is assumed, if you look at the IPIs or anything, it is assumed that there is a murder conviction. You cannot argue at the sentencing hearing that he did not commit the murder. You can't even argue residual guilt that there's some doubt that he could commit the murder. So by contesting the murder, he did not preserve any issue at the eligibility hearing. And that is the crux of this case. That one sentence that counsel said eliminated the eligibility hearing. He did not preserve any issue that could keep Mr. Adkins from being found eligible for death penalty. And that is the crucial issue here. There was no adversarial testing of the aggravating factor, and that was not sanctioned by Mr. Adkins. What about the prejudice prong of Strickland? The prejudice prong of Strickland would be very hard to meet, Your Honor, as far as the aggravating factors because of the evidence in the case. It would be very difficult to meet. So you're saying even if we did find the ineffective assistance of counsel with respect to the concession and go through the Strickland factors, it would be tough to show that there was prejudice? It would be difficult to show in the conventional sense, but, you know, hence the Hattery issue. But the prejudice would be not in the sense that the outcome might have been different, but in the deprivation of Mr. Adkins' right to have his eligibility determined by a trier of fact, which pretty much gets back to the Hattery thing. But to me that's very prejudicial that trial counsel has eliminated Mr. Adkins' stated desire to not admit that he's eligible and to have that, to at least have the state's case against him held to the burden of proof. That would be my argument as prejudice under Strickland. And, again, that's very similar to Hattery. Those are the only ñ that was the main point the State raised that I felt needed to be addressed. I'd be glad to answer any other questions if any of the Justices had any. If not, thank you very much. Thank you, sir. Case number 107-309 will be taken under advisement.